IN THE CIRCUIT COURT FOR HARFORD COUNTY, MARYLAND

| | |
|---|---|
| **PRESCOTT LOVERN, SR.**<br>15 E. Churchville Rd., STE 150<br>Bel Air, MD 21014<br>(941)-870-8072<br><br>          PLAINTIFF,<br>v.<br><br>**CITIBANK, N.A.**<br>701 East 60th St N.<br>Sioux Falls, SD 57104<br>(605)-331-2626<br><br>**MASTERCARD INCORPORATED**<br>2000 Purchase Street<br>Purchase, NY 10577<br>(914)-249-2000<br><br>          DEFENDANTS. | Case No. 12-C-17-2518 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**



## PRELIMINARY STATEMENT

Apparently on behalf of some anonymous assignor, Plaintiff "Prescott Lovern, Sr.," in a Complaint comprising a random hodgepodge of conclusory allegations, seeks a puzzling declaration untethered to any legal claim or controversy. Plaintiff seems to seek a declaration that consumers secretly pay hidden interchange fees even though those fees are paid from one bank to another in connection with credit card transactions.

Prescott Lovern is a pseudonym for William Michael Lovern,[1] who has a history of bringing vexatious, baseless litigation. This case is no different. Mr. Lovern claims that interchange fees are hidden but his Complaint cites documents more than a decade old making clear that the fact of these bank-to-bank fees is public. His Complaint also makes plain that consumers who buy goods or services with credit cards pay the exact same amount for them as those using other payment methods. Such consumers are not secretly charged an interchange fee because they happen to use a credit card. And, of course, those consumers receive the exact same goods and services without respect to the method of payment they use.

Plaintiff's Complaint should be dismissed because it fails at the most basic levels. It fails, first, because he lacks standing to sue. The Complaint does not establish that Plaintiff has a legal interest in the suit he brings. It does not allege that Plaintiff himself is a Mastercard credit card holder, that he is bringing this suit to protect his own interests as a Mastercard credit card holder, or that he otherwise has a personal stake in the lawsuit. His vague and conclusory

---

[1] *See, e.g.*, Minute Order Granting Defendants' Motion for Reconsideration, *Lovern v. Prudential Ins. Co. of Am.*, Case No. 12-CV-00704 (D.D.C. Jan. 22, 2014) (attached as Ex. 1) (dismissing lawsuit upon finding "substantial evidence that 'Prescott Lovern' is not relator's real name" and that "his real name is William Michael Lovern"). Filing a lawsuit under a false name violates Maryland Rule 1-301, which requires that "[a]n original pleading shall contain the names and addresses ... of all parties to the action." *See also United States v. W. Michael Lovern*, 701 F.2d 1104 (4th Cir. 1983) (Mr. Lovern convicted of conspiracy to misapply bank funds and make false entry into bank records); *United States v. William Michael Lovern a/k/a Michael Lovern, Sr.*, 293 F.3d 695, 701 (4th Cir. 2002) (noting use of Mr. Lovern's pseudonyms in case regarding conviction for intimidation of Treasury Inspector General for Tax Administration).

allegation that his standing was conferred by assignment from a "Jane Doe" is not sufficient under Maryland law. In fact, Maryland law prohibits Plaintiff from filing this action under a fictitious name and typically only provides such protection of anonymity to those "seeking to be shielded from some harm or injury." *See John Doe v. Shady Grove Adventist Hospital*, 89 Md. App. 351, 363 (Md. Spec. App. 1991); Md. Civ. Pro. § 2-201 (2017).

Even if Plaintiff had shown legal standing, his allegations do not establish that there is any justiciable controversy for the Court to decide. The Complaint allegations suggest no actual or imminent controversy for resolution under the Declaratory Judgment Act regarding legal rights or obligations between the parties or a denial or deprivation of some legal right—much less that the declaration he seeks would resolve such a controversy. Although the Complaint references the Maryland Consumer Protection Act, it does not allege the elements of a claim under that Act. The Complaint does not allege a misrepresentation, it does not allege reliance on any such misrepresentation, and it does not allege injury owing to any misrepresentation. Rather, the factual declaration Mr. Lovern appears to seek—about how interchange fees are paid—is completely untethered from any actual or imminent dispute about the parties' legal rights or relations.

Defendants thus respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.

## PLAINTIFF'S ALLEGATIONS[2]

---

[2] Well-pled factual allegations in a complaint are viewed, for purposes of a motion to dismiss, in the light most favorable to the nonmoving party; conclusory allegations, by contrast, receive no weight. *RRC Northeast, LLC, v. BAA Md., Inc.*, 413 Md. 638, 643 (2010).

Plaintiff alleges he is "part of the M Cardholder group as he has taken assignment of legal claims from Jane Doe (Doe) pursuant to *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008)." Compl. ¶ 4. He does not allege any additional facts about the assignment including what the M Cardholder group is, or what rights or remedies it entitles him to. Plaintiff alleges only that Doe "lives in the County and has a Citi Mastercard." *Id.* ¶ 5.

In the Mastercard system, the Complaint alleges, certain banks have contracts with Mastercard, and are responsible for issuing credit cards to consumers and maintaining all aspects of the cardholder relationship. *Id.* ¶ 13. Such banks are referred as "issuing banks." Another group of banks are called "acquiring banks." They, according to the Complaint, also have contracts with Mastercard, and are responsible for "acquiring" merchants who accept Mastercard credit card transactions when consumers buy goods and services from them. *Id.* ¶ 15. According to the sources Plaintiff cites in his Complaint, Mastercard "plays an important role by imposing rules for issuing cards, clearing and settling transactions, advertising and promoting the brand, authorizing transactions, assessing fees, and allocating revenues among transaction participants." *Id.* ¶ 16.

When a credit cardholder engages in a transaction at a merchant, the issuing bank receives a fee (*i.e.*, interchange fee) from the acquiring bank as part of the transaction. Plaintiff alleges that, decades ago, both Mastercard and Visa created interchange fees to incentivize issuing banks to issue credit cards. *Id.* ¶¶ 7-8, 10. The quotations in Plaintiff's Complaint make clear that when using a credit card, a cardholder's actions are limited to "present[ing] the card to the merchant to purchase [the] good or service." *Id.* ¶ 16 (quoting *FDIC Banking Review*). Thereafter, the transaction is completed and the cardholder receives the goods or services in exchange for the credit card payment. A consumer using a credit card is charged by

the merchant the exact same price as a consumer paying cash or any other payment method for the same goods or services, and receives goods or services from the merchant in the exact amount charged. *Id.* ¶ 16 (describing a $100 dollar purchase).

The crux of Plaintiff's Complaint seems to be his conclusory allegation that Bank of America executives and Dee Hock as its president (both non-parties to the case) had somehow created a "scheme to hide the [interchange fee] from…credit card cardholders so they would not know they were paying" them. *Id.* ¶ 10. Of course, Plaintiff does not explain *how* the credit card holder is purportedly paying the interchange fee given, as noted above, merchants typically charge the same price for goods or services irrespective of how the purchaser makes his or her payment. Nonetheless, Plaintiff claims that "today every Mastercard credit card hides the [interchange fee] from the cardholder so they do not know they pay the [interchange fee]." *Id.* Accordingly, he seeks a declaration that "the Mastercard credit card cardholder does pay the [interchange fee]." *Id.* ¶ 20

Plaintiff, however, includes no details whatsoever about this alleged "scheme." He does not identify any manner or communications in which Mastercard or Citibank purportedly "hide" the existence of the interchange fees or how they are paid. To the contrary, he cites public sources discussing the fact of these fees and their purpose to "provide an incentive for participating in the network." *Id.* ¶ 16. The documents he cites expressly discussing interchange fees and the manner in which transactions are structured date back more than a decade. *Id.*

## ARGUMENT

Plaintiff's Complaint should be dismissed because he lacks standing to bring a claim since he has no personal stake in the suit and has not alleged a valid assignment; and because he

has not alleged any justiciable controversy that the declaratory judgment would resolve. Under these circumstances, even entertaining a declaratory judgment motion would be improper.

### I.    Plaintiff Does Not Have Standing to Bring This Action on Behalf of Himself or Jane Doe Because He Has No Personal Legal Stake in This Lawsuit and Has Not Alleged Sufficient Facts To Establish a Valid Assignment of Valid Legal Claims

Standing relates to whether a litigant is permitted to have the court decide the merits of the dispute or of particular issues. *Pollokoff v. Maryland Nat. Bank*, 288 Md. 485, 497, 418 A.2d 1201, 1208 (1980) (citations omitted). It "is a threshold issue; a party may proceed only if he demonstrates that he has a real and justiciable interest that is capable of being resolved through litigation." *Norman v. Borison*, 192 Md. App. 405, 420 (Md. Ct. Spec. App. 2010) (citing *Mayor & City Council of Ocean City v. Purnell-Jarvis Ltd.*, 86 Md. App. 390, 403 (Md. Ct. Spec. App. 1991)). To show standing, a plaintiff must display an "injury-in-fact," or "an actual legal stake in the matter being adjudicated." *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. 375, 399 (2008). Standing requirements apply to declaratory judgment actions, just like any other. *120 West Fayette Street, LLP v. Mayor & City Council of Baltimore City*, 413 Md. 309, 355-56 (2010); *Roper v. Camuso*, 376 Md. 240, 247 n.3 (2003) ("It is proper to dismiss an action for declaratory judgment when the party seeking such judgment has no standing and there is no justiciable controversy properly before the court."); *Citizens Planning and Hous. Ass'n. v. Cnty. Executive of Baltimore Cnty*, 20 Md. App. 430, 437 ("If the plaintiff lacks standing to bring a suit, then the controversy is not justiciable."), *rev'd on other grounds*, 273 Md. 333 (1974).

Despite seeking a declaration relating to Mastercard credit card holders in Maryland, Plaintiff does not allege that he himself is a Mastercard credit card holder, that he is bringing this suit to protect his own interests as a Mastercard credit card holder, or that he otherwise has a personal stake in the lawsuit, because he does not. Instead, he appears to bring this lawsuit based on a purported assignment to him of unspecified claims from an unnamed alleged Mastercard

holder, and cites *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008), as the sole basis for his ability to assert claims on behalf of the unidentified assignor. These allegations are insufficient.

As a threshold matter, this case is governed by *state* law standing doctrine, not the standing principles that flow from Article III of the United States at issue in *Sprint*. Plaintiff lacks standing himself under state law because he has not demonstrated a "legal interest, such as one of property, one arising out of a contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." *Committee for Responsible Development on 25th Street v. Mayor & City Council of Baltimore*, 137 Md. App. 60, 62 (2001).

Where, as here, a claim rests on a purported assignment, the question of whether Plaintiff has standing to sue "wholly depends on whether there was a valid assignment" of a valid legal interest. *Pasadena Receivables, Inc. v. Parker*, No. 13-C-10-084673, 2011 WL 8003523 (Md. Cir. Ct., Howard Cnty., Sept. 28, 2011) (remanding case to provide appellant with opportunity to establish that a valid assignment has been made thereby establishing standing). Under Maryland law, "[c]ontractual rights are assigned when the assignor manifests the intent to make the assignment." *La Belle Epoque, LLC v. Old Europe Antique Manor, LLC*, 406 Md. 194, 211 (2008). Here, Lovern has not pleaded that there is a valid assignment agreement between Jane Doe and Plaintiff transferring any such interest (or any claims or rights for that matter). The Complaint offers no facts suggesting any valid assignment agreement between him and Jane Doe. It provides no information about who Jane Doe is, the claims she purportedly has against Citibank and/or Mastercard, or what "legal claims" she purportedly assigned. In fact, Plaintiff does not even reference an assignment agreement at all. His vague statement that he "[took] an assignment of legal claims from Jane Doe" is insufficient to establish that that Plaintiff has been

properly transferred legal ownership of Jane Doe's claims—a prerequisite for standing to sue on her behalf. *See Norman v. Borison*, 192 Md. App. 405, 420, 994 A.2d 1019 (Md. Ct. App. 2010) ("In order to have standing, a party must demonstrate an 'injury-in-fact,' or an actual legal stake in the matter being adjudicated." (citing *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. 375, 379 (2008)). Without more, he has no standing to bring this action, and his claim must be dismissed as not justiciable. *See Citizens Planning and Hous. Ass'n. v. Cnty. Executive of Baltimore Cnty.*, 316 A.2d 263 ("If the plaintiff lacks standing to bring a suit, then the controversy is not justiciable."), *rev'd on other grounds*, (Md. 1974).

The *Sprint* case Plaintiff cites is inapposite. *Sprint* held that billing and collection firms, the assignees of legal claims for money owed to payphone operators, had standing to pursue a claim in federal court despite promising to remit proceeds of the litigation to the operators, since the firms were properly assigned the claims and based their suit upon a concrete and particularized injury in fact. *Sprint*, 554 U.S. at 286-89. As noted above, that case involved *federal* Article III standing doctrine, which is not at issue here.[3] *Sprint* is also distinguishable because it did not involve the type of conclusory allegations Plaintiff has made here about the assignment. As noted, Plaintiff here pleads in barebones fashion that he has an unspecified assignment from an unidentified individual; by contrast, in *Sprint*, the complaint detailed an actual, valid assignment agreement conferring to the plaintiff aggregators for the purposes of collection the "rights, title and interest" in the assignor payphone operators' claims. *See Sprint*, 554 U.S. at 272 ("assign[ed], transfer[red] and set[] over to [the aggregator] for purposes of

---

[3] "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a ' "fairly ... trace[able]" ' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is ' "likely" ' and not 'merely "speculative" ' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74, 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (calling these the "irreducible constitutional minimum" requirements).

collection, all rights, title and interest of the [payphone operators] in the [operators'] claims, demands or causes of action."). The complaint there thus detailed key terms of the assignment that are absent here and the Supreme Court expressly relied on these terms to refute petitioner's argument that the assignments for collection do not adequately transfer the assignors' injuries. *Id.* That case also involved specific legal claims for money owed for collection purposes; there is nothing comparable here.

## II. Plaintiff's Allegations Fail to State a Claim as a Matter of Law

### A. Plaintiff's Allegations Are Insufficient to Show Any Justiciable Controversy And Thus Fail To State a Claim Under the Declaratory Judgment Act

A complaint fails to state a claim when, even if the allegations of the complaint are true, the plaintiff nevertheless is not entitled to relief as a matter of law. *Lubore v. RPM Associates, Inc.*, 109 Md. App. 312, 322, 674 A.2d 547, cert. denied, 343 Md. 565 (1996). The facts set forth in the complaint must be "pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *RRC Northeast, LLC, v. BAA Md., Inc.*, 413 Md. 638, 643 (2010). "While the words of a pleading will be given reasonable construction, when a pleading is doubtful and ambiguous, it will be construed most strongly against the pleader in determining its sufficiency." *Bobo v. State*, 346 Md. 706, 709, 697 A.2d 1371, 1373 (1997). Even if Plaintiff had alleged a cognizable assignment (which he has not), the Complaint should be dismissed for the independent reason that none of Plaintiff's allegations establish the type of justiciable controversy Maryland's Declaratory Judgment Act requires.

Pursuant to that Act, Md. Cts. & Jud. Proc. Code § 3-409, a court may grant a declaratory judgment *only*

> if it will terminate the uncertainty or controversy giving rise to the proceeding *and* (1) an actual controversy exists between the contending parties, (2) antagonistic claims are present between the parties which indicate imminent and inevitable litigation, or (3) a

party asserts a legal relation, status, right, or privilege that is challenged or denied by an adverse party.

*In re Heilig*, 372 Md. 692, 711 (2003) (citing Md. Cts & Jud. Proc. Code § 3-409) (emphasis added). These prongs all bear on whether there is actually a justiciable controversy for the court to resolve. *Hatt v. Anderson*, 297 Md. 42, 46 (1983). "It is [] clear that the existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action." *Id. at* 45. "The addressing of non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." *Id. See also State v. G & C Gulf, Inc.*, 442 Md. 716, 721, 114 A.3d 694, 697 (2015) ("well settled" that declaratory judgment only permitted where it serves useful purpose and terminates controversy).[4]

There is simply no such justiciable controversy here. A controversy involves competing legal positions regarding "parties seeking a determination ***of their legal rights***," *Harford Cnty. v. Schultz*, 371 A.2d 428, 432 (Md. 1977) (emphasis added)—not just a "mere difference of opinion" untethered to legal rights or claims, *Hatt*, 297 Md. at 46 (citations omitted). "[A] controversy is justiciable when there are interested parties asserting ***adverse claims*** upon a state of facts which must have accrued wherein ***a legal decision*** is sought or demanded." *Hatt*, 297 Md. at 46 (emphasis added). A disagreement over which declaratory relief is sought must be such that "a court can see what ***legal*** issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *See, e.g., Oyarzo v. Maryland Dep't of Health & Mental Hygiene*, 187 Md. App. 264, 274 (Md. Ct. Spec. App. 2009) (emphasis added).

---

[4] *See Eberts v. Congress'l Country Club*,197 Md. 461, 465, 79 A.2d at 519 (1951) ("declaratory decree should not be given unless there is either an actual existing controversy, or antagonistic claims which indicate inevitable litigation, or when a party asserts a legal status or right and there is a denial by an adversary party, and the court is satisfied that such a decree will serve to terminate the controversy"); *Prince George's Cnty. v. Chillum–Adelphi Volunteer Fire Dep't, Inc.*, 275 Md. 374, 340 A.2d 265 (1975) ("It is thus clear that the declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise.").

None of Plaintiff's allegations, even indulging them most charitably, identify any justiciable adverse legal claims or legal positions. Plaintiff's barebones allegation that "there exists a case and controversy between Plaintiff and Defendants, which is ripe for adjudication," Compl. ¶ 21, is of no moment; this is the type of conclusory allegation, supported by no facts, that merits no consideration under Maryland law. *Bourdreaux v. MICROS Sys. Inc.*, No. 1029, 2016 WL 4415346, at *7 (Md. Ct. Spec. App. Aug. 19, 2016).

Otherwise, Plaintiff alleges—again in conclusory fashion—that his position is that "the Mastercard credit card cardholder pays the IF [interchange fee]," but that "[d]efendants' current position is that the Mastercard credit card cardholder does not pay the IF." Compl. ¶ 20. He never, however, seeks to connect this issue in any way to an actual or imminent controversy, claim, or denial about substantive *legal* claims, rights, or obligations.[5] Plaintiff has not identified any legal right or claim to which this question links. This is in stark contrast to the types of declarations courts have been asked to consider in other cases, which purported to seek clarity on legal rights or legal obligations. *See, e.g., Hatt*, 297 Md. at 43 (plaintiff sought declaration that regulation was void); *Prince George's Cnty. v. Bd. of Trustees*, 304 A.2d 228, 229 (Md. 1973) (parties sought "judicial determination of their respective rights and obligations under allegedly conflicting provisions of the charter and code"); *Oyarzo*, 187 Md. App. 264 at 4 (farmer sought declaration that regulation regarding sale of raw milk was void); *Polakoff v.*

---

[5] Courts that have looked at related issues, in cases involving actual legal controversies, have noted that the interchange fees that are allocated to issuing banks are, in fact, ***not*** paid directly by cardholders, since cardholders only pay the full price for the item or service they purchased with the card. *See Salveson v. JP Morgan Chase & Co.*, 663 Fed. Appx. 71 (2d Cir. 2016) ("When a cardholder makes a $100 purchase, the merchant sends notice of the charge to its acquiring bank, and the acquiring bank in turn sends the information to the card issuer bank. If the charge is approved, the issuer bank pays the acquiring bank for the $100 purchase, retaining a portion as an interchange fee. The issuer bills the cardholder, who then is bound to pay the issuer according to the terms of the card. ***The cardholder has not directly paid the interchange fee, but rather has only paid the full price for the item or service it has purchased.***") (emphasis added).

*Hampton*, 148 Md. App. 13, 18 (Md. Spec. App. 2002) (landlord plaintiff sought declaration that Maryland code provision permanently barred tenant from filing injunction against him).

    **B.    Plaintiff's Allegations Likewise Fail To State a Claim Under the Maryland Consumer Protection Act**

Plaintiff's two untethered references to the Maryland Consumer Protection Act (Compl. ¶¶ 4,18), do not change this analysis, because nothing about that Act nor Plaintiff's allegations suggests that the declaration would address a relevant question bearing on any actual or imminent controversy under the MCPA. Indeed, the allegations reflect that, even with the declaratory judgment he seeks, Plaintiff could not state a claim for relief under that Act. A private party bringing a claim under the MCPA must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). Here, Plaintiff alleges none of the necessary elements that would suggest—declaration or not—he could state a claim under the MCPA.

*First*, Plaintiff has not identified any unfair or deceptive practice or misrepresentation that could give rise to a claim under the Maryland Consumer Protection Act. Although Plaintiff has stated, in conclusory fashion, that "every Mastercard credit card hides the [interchange fee] from the cardholder" and that defendants and conspirators have an "ongoing scheme and continued misrepresentation as to who pays the IF," he has not provided any facts to support this statement or that would suggest in any way that interchange fees are somehow misrepresented. To the contrary, the existence of these fees and the structure of transactions is entirely public. His Complaint, in fact, illustrates this point by citing to numerous public sources, discussing the

12

allocation of fees, which date back far beyond any governing statute of limitations.[6] Compl. ¶¶ 11, 16.

*Second*, Plaintiff includes no allegations suggesting any reliance. To state a misrepresentation claim under the MCPA, a plaintiff must allege not only that the defendant made a false or misleading statement or engaged in a misleading practice, but also that the plaintiff *relied* upon that representation or practice. *See Peete–Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 432–33 (D. Md. 2015); *Bey v. Shapiro Brown & Alt, LLP,* 997 F. Supp. 2d 310, 319 (D. Md.), *aff'd,* 584 Fed. App'x 135 (4th Cir. 2014); *Goss v. Bank of America, N.A.,* 917 F. Supp. 2d 445, 450 (D. Md. 2013). Plaintiff does not allege that he engaged in any conduct he would otherwise not have, but for Plaintiff's reliance on some statement or representation by Mastercard or Citibank.

*Finally*, Plaintiff does not allege any injury arising out of any alleged violations of the MCPA. In a private action under the MCPA, the injury must be "objectively identifiable ... [i]n other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance" on the misrepresentation. *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257 (Md. 2007). Here, all the facts Plaintiff has alleged suggest that, irrespective of the declaration that Plaintiff seeks, a cardholder buying $100 worth of goods and services with a credit card gets $100 worth of goods and services—and the same $100 worth of goods and services that any other consumer gets. There is no injury.[7]

---

[6] Under Maryland law, a "civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101.

[7] The injury requirement is no mere technicality. The injury element of private suits to enforce the MCPA is critical to effectuating its statutory purpose. *See Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) ("A person who files a complaint with the Attorney General need not allege that an actual injury occurred; however, a person bringing a private cause of action pursuant to § 13-408 must allege that an actual injury occurred. Requiring actual injury in private suits strikes an important balance between two competing legislative objectives: preventing unfair

13

*Dainty v. Wells Fargo Bank*, No. TDC-16-2755, 2017 WL 750478 (D. Md. Feb. 23, 2017), is a recent federal case construing the statute, and illustrates well the deficiencies in Plaintiff's allegations here. The plaintiff in *Dainty* was an individual who filed a claim under the MCPA against Wells Fargo Bank, alleging that, after foreclosure proceedings began against him, Wells Fargo sent him a letter containing false or deceptive statements that induced him to complete and submit an application for a Home Affordable Modification of his loan. *Id.* at *1, *3-4. He ultimately did not qualify for the modification. *Id.* at *2. Unlike here, the plaintiff in *Dainty* identified actual representations made by the defendant; Plaintiff has identified no representations or deceptions Mastercard or Citibank purportedly practiced here, and the Complaint on its face reflects that interchange fees were public information. Moreover, the court in *Dainty* noted that the plaintiff's allegations there failed because, like Plaintiff here, "the Complaint fails plausibly to allege reliance that caused an actionable injury under the MCPA." *Id.* at *4. Dainty had contended that he "relied to his detriment on the representations" by completing the application and thus "forgoing defensive action in the foreclosure proceedings"; Plaintiff, by contrast, alleges no reliance at all here. And the *Dainty* court further found that the plaintiff had alleged no compensable losses even arguably owing to the representations there. Nor has Plaintiff here alleged any loss; the Complaint makes clear that cardholders receive goods in the exact amount as they pay, notwithstanding that issuing banks receive interchange fees.

\* \* \*

A declaratory judgment may not be entered where, as here, the declaration "would not serve a useful purpose or terminate a controversy." *Hamilton v. McAuliffe*, 277 Md. 336, 340 (1976); *See also Koontz v. Ass'n of Classified Emps.*, 297 Md. 521, 467 A.2d 753 (1983)

---

or deceptive practices while precluding aggressive, 'self-constituted private attorneys general' from bringing suit 'over relatively minor statutory violations.'").

14

(affirming dismissal of declaratory judgment action when dispute was "entirely academic" and there was no "imperative and manifest injury to establish a rule of future conduct in matters of important public concern"); *Hanover Investments v. Volkman*, 455 Md. 1, 165 A.3d 497 (2017). Here, since there is no justiciable controversy as required under Maryland law (including under the MCPA), this declaration would terminate nothing. *Polakoff v. Hampton*, 148 Md. App. 13, 39 (2002) (affirming dismissal of declaratory judgment suit which "appear[ed] simply to be an attempt to obtain an advisory opinion . . . on a set of hypothetical, abstract, and necessarily incomplete facts, without an existing case or controversy.").

## CONCLUSION

For the reasons stated above, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted:

Craig A. Benson
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
2001 K Street, NW
Washington, DC 20006
Tel: (202) 223-7343
Fax: (202) 204-7343
cbenson@paulweiss.com

*Counsel for Mastercard*

Colleen M. Lauerman
Sidley Austin LLP
1501 K Street, N.W. #600
Washington, DC 20005
Tel: (202) 736-8365
clauerman@sidley.com

Benjamin R. Nagin (*pro hac* to be submitted)
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5911
bnagin@sidley.com

*Counsel for Citibank, N.A.*