IN THE CIRCUIT COURT FOR HARFORD COUNTY, MARYLAND

**PRESCOTT LOVERN, SR.**
15 E. Churchville Rd., STE 150
Bel Air, MD 21014
(941)-870-8072

PLAINTIFF,

V.

Case No. 12-C-17-2518

**CITIBANK, N.A.**
701 East 60th St. N.
Sioux Falls, SD 57104
(605)-331-2626

**MASTERCARD INCORPORATED**
2000 Purchase Street
Purchase, NY 10577
(914)-249-2000

DEFENDANTS.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Prescott Lovern, Sr. ("Plaintiff"), in response and opposition to Defendants' Motion to Dismiss Complaint received by Plaintiff on January 12, 2018, ("Defendants' Motion") and Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, (Defendants' Memorandum"), states as follows:

### I. INTRODUCTION

In Defendants' Memorandum, Preliminary Statement, Defendants first attack Plaintiff and his name. Considering they took the time to look at a federal qui tam case [UNITED STATES OF AMERICA, EX REL. PRESCOTT LOVERN, SR. v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA et al (Prudential), No. 1:12-cv-00704-EGS, U.S.

District Court, District of Columbia] where Plaintiff was the Relator, and the filing attorney was licensed and in good standing in California and Washington, D.C., Defendants know that Plaintiff did not file that case.

What the Defendants fail to tell this Court about that case is that it was not dismissed as being frivolous; in fact the merits were never adjudicated. Defense counsel in the *Prudential* case also unethically attacked Plaintiff and his name, and Plaintiff's local counsel withdrew. Plaintiff's primary counsel was not a member of the Federal Bar in the District of Columbia (DoC) and he could NOT proceed under the court's Local Rules, as he could not find a Federal Bar Sponsor, so the case was dismissed without prejudice by Judge Sullivan, to be filed at a later date. Plaintiff does not file baseless lawsuits, and there is no "history" of such.

About a year after the *Prudential* case was dismissed Judge Sullivan and all the Judges in the DoC U.S. District Court were **sued** for the illegal Local Rules that prevent many attorneys from practicing in the court. [NATIONAL ASSOCIATION for the ADVANCEMENT of MULTIJURISDICTION PRACTICE, et al., v. RICHARD W. ROBERTS, CHIEF JUDGE, et al (RDM), Civil Action No. 13-1963, (hereinafter "Local Rule Lawsuit"). Shortly thereafter, Judge Sullivan, on his on motion, vacated Plaintiff's dismissal without prejudice, and he dismissed it with prejudice, based on fake information [fraud on the court committed by *Prudential* defense counsel] that Prescott is not Plaintiff's name, which was put into the record over a year before Judge Sullivan vacated his own Order. There was no hearing on the issue of Plaintiff's name, violating Plaintiff's *due process* and *equal protection* rights. Judge Sullivan vacated his own Order to dismiss *without prejudice* because he knew the *Prudential* case, if re-filed, would be problematic in defending the Local Rule Lawsuit that he was a defendant.

2

Many years ago after Plaintiff moved to Maryland he added the middle name "Prescott" to honor his youngest Son named Prescott, making his name William Michael Prescott Lovern, Sr.; and, to hopefully eliminate confusion at the credit bureaus for his oldest Son who is William Michael Lovern, Jr. This was done legally under Maryland common law.

> More than a century ago Maryland enacted legislation which authorized the changing of the name of any person by a judicial proceeding. Acts 1868, ch. 311. Although amended and implemented by Rules of Procedure, its substance remained the same. It followed the general pattern of legislation on the subject in other jurisdictions. <u>The statute does not provide that the statutory form is to be exclusive</u>, and it is clear that the statute does not preempt the common law. In Maryland, a person may change his name under the common law rule or through a judicial proceeding as he desires. *Hall v. Hall*, 351 A.2d 917 (Md. Ct. Spec. App. 1976). [Also see See *Torbit v. State*, 102 Md. App. 530, 650 A.2d 311 (1994)].

The rule of law established by Maryland's Appellate Court does not circumvent, or contradict federal law; therefore, there is no preemption. One may be employed, do business, and enter into other contracts, and sue and be sued under any name they choose at will (*Lindon v. First National Bank* 10 F. 894; *Coppage v. Kansas* 236 U.S. 1, In re McUlta 189 F. 250). Plaintiff has used Prescott ever since he added it to his name. Plaintiff is president of R&L Associates Law [www.rlassociateslawpublicinterest.com]. Judge Sullivan backed off the name issue in his final Order after Plaintiff filed a Judicial Complaint for the violation of Plaintiff's constitutional rights.

Defense counsel here obviously looked at the *Prudential* case documents explaining how Plaintiff <u>legally</u> added "Prescott" to his name [Plaintiff's Rule 60(b) Motion (*Prudential* case)]; however, Defense counsel conveniently left that out of their Defendants' Memorandum.

Defendants have also been disingenuous in their Defendants' Memorandum Preliminary Statement with *Footnote 1*. Defendants, by and through counsel, tell this Court about a 36 year

old case about Plaintiff in an attempt to prejudice this Court against Plaintiff even though it's not admissible, or, relevant. [MD Rule 5-609(b)]. That case has incredible extenuating circumstances that Plaintiff will not go in to because it's not relevant [MD Rule 5-401]; and, a waste of time. The other case mentioned in *Footnote 1* is also irrelevant and in violation of MD Rule 5-609(b). That misdemeanor has nothing to do about a false name. Michael Lovern, Sr. is Plaintiff's real name, and before he added Prescott to his middle name.

The real question here is why Defendants are introducing false accusations, irrelevant, and inadmissible evidence, trying to prejudice this Court, as to Plaintiff? The answer is simple. Plaintiff Exhibit A, [damage lawsuit - connected to Plaintiff's Request for Declaratory Judgment, attached]. Both Defendants in this case and both defense law firms in this case are named Defendants in Plaintiff Exhibit A, and they knew that long before this case was filed. Plaintiff Exhibit A, yet to be filed, speaks for itself. It was Plaintiff's decision and right to NOT request damages in this case.

Prescott Lovern, Sr. is Plaintiff's legal name, and, he has legal standing via Jane Doe's assignment [MD law *infra*], and, she is available to testify as to her assignment to Plaintiff.

## II. DEFENDANTS" ARGUMENT

On page 5 of Defendants' Memorandum Defendants' state –

> Plaintiff, however, includes no details whatsoever about this alleged "scheme." He does not identify any manner or communications in which Mastercard or Citibank purportedly "hide" <u>the existence of the interchange fees or how they are paid</u>. To the contrary, he cites public sources discussing the fact of these fees and their purpose to "provide an incentive for participating in the network." <u>The documents he cites expressly discussing interchange fees and the manner in which transactions are structured date back more than a decade.</u> *Id.* [underline added].

4

Once again Defendants are being disingenuous about how Interchange Fees ("IF" of "IFs") are paid. Plaintiff explains in his pleading, pg. 5 – 6, para. 13, that IFs are charged to the MasterCard Cardholder's credit line, as part of every MasterCard transaction, then deducted by Defendant Citibank after the transaction amount is charged to Cardholder's credit line. Citibank keeps the IF, part and parcel to all merchant transactions charged to Citibank MasterCards. The amount of the IF was never disclosed on the monthly bill of any Citibank / MasterCard customer, including Ms. Does, as required by federal law, explained in great detail in Plaintiff Exhibit A, para.'s 26-30, previously known to Defendants and their counsel.

As Defendants state in Defendants' Memorandum pg. 1, para. 2, they are partially correct in that consumers pay the same amount with cash versus MasterCard. It's not the same all the time. Example:

> " 'I just couldn't hang in there anymore,' said Jesus, who owns Omid's Crown Auto Service in Columbia, MD. 'When a little bit of business did come in, I'd end up paying a 3 percent fee on credit card transactions - and there wouldn't be any profit left.' Today, Jesus says about one-half of his customers pay with cash, while the other half - particularly corporate account holders - continues to use credit cards. Prices for cash transactions are generally about 3 percent lower than those involving credit cards, he said. [underline added].
>
> Merchants, most visibly gasoline stations, have been offering discounts for cash payments because their agreements with credit card companies barred them from tacking on surcharges to process plastic.
>
> But now, following a settlement between merchants and credit card giants Visa and MasterCard, that has changed. According to new rules that went into effect Jan. 27, businesses are allowed to charge up to 4 percent on credit card transactions — provided they share their intentions with credit card companies and have clear signs telling customers about their policy." **As rules change, more retailers offer discounts for cash payments, Washington Post June 2013.** [underline added].

Defendants state in Defendants' Memorandum, pg. 5, para. 3 about evidentiary documents identified in Plaintiff's pleading that "*The documents he cites expressly discussing*

5

*interchange fees and the manner in which transactions are structured date back more than a decade.*" As Plaintiff Exhibit A explains in great detail the IF Conspiracy is still ongoing and it's 48 years old.

Defendants also state in Defendants' Memorandum that "*because he [Plaintiff] has not alleged any justiciable controversy that the declaratory judgment would resolve.*" [last para. pg. 5 & 1st para. pg. 6]. Defendants confirmed the controversy in Defendants' Memorandum, pg. 1, para. 1 when they said "*Plaintiff seeks a declaration that consumers secretly pay hidden interchange fees even though those fees are paid from **one bank to another** in connection with credit card transactions.*" [bold print & underline added].

### III. DEFENDANTS' NO. I (Defendants' Memorandum)

**I. Plaintiff Does Not Have Standing to Bring This Action on Behalf of Himself or Jane Doe Because He Has No Personal Legal Stake in This Lawsuit and Has Not Alleged Sufficient Facts To Establish a Valid Assignment of Valid Legal Claims**

Ms. Doe obtained her Citibank MasterCard in May 2016, and she has never been able to get disclosure of the IFs charged to her account. Collected fees / charges that were required to be disclosed are illegal and must be refunded with interest. [Hornbook law]. Ms. Doe / Plaintiff have been injured. Citibank is all too familiar with illegal charges / fees.

"Citi to refund $5 million to cardholders for illegal collections." [CreditCards.com 2016].

"Citi ordered to pay $770 million over credit card practices…The CFPB said that about 7 million customer accounts were affected by Citibank's "deceptive marketing" practices, which included misrepresenting costs and fees and charging customers for services they did not receive." REUTERS BUSINESS NEWS JULY 21, 2015

"As of May 21, Citi had paid out over $17 billion in fines and settlements since the financial crisis." REUTERS BUSINESS NEWS JULY 21, 2015. [underline added].

This information is relevant, as to a pattern of conduct.

6

...

Plaintiff has a valid, legal, written assignment of legal claims [chose of action] from Ms. Doe, executed, which said assignment will be introduced in court when she testifies. As pled, Ms. Doe is entitled to disclosure of all IFs. [Plaintiff's pleading and Exhibit A *supra*].

**MARYLAND ASSIGNMENTS**

Defendants challenged the validity of Plaintiff's assignment. In *Hernandez v. Suburban Hosp.*, 319 Md. 226, 234, 572 A.2d 144 (1990), the Court, quoting from *Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849 (1986) and *Summers v. Freishtat*, 274 Md. 404, 335 A.2d 89 (1975), observed that even "[a]n unliquidated tort claim for money damages for personal injuries is encompassed within the definition of a chose in action" and that "a chose in action in tort is generally assignable, in the absence of a statutory prohibition, if it is a right which would survive the assignor and could be enforced by his personal representative." In this regard, Maryland Code (1989 Repl. Vol.), § 6-401 of the Courts and Judicial Proceedings Article provides that, except for slander, causes or rights of action survive the death of either party.

In *James v. Goldberg*, 256 Md. at 527, 261 A.2d 753, the court said, "[a]n unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment." See also *Central Collection v. Columbia Medical*, 300 Md. 318, 331, 478 A.2d 303 (1984). In these circumstances, the assignment vests equitable title to the assigned funds in the assignee. *Seymour v. Finance & Guaranty Co.*, 155 Md. 514, 531, 142 A. 710 (1928)." Assignments generally operate to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment.

An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the

7

assignee any greater right than the right possessed by the assignor. See *Case v. Marshall*, 159 Md. 588, 152 A. 261 (1930). See also 6 C.J.S. "Assignments," § 82, pages 1136-37, and § 84, page 1139.

## IV. DEFENDANTS' NO. 2 (Defendants' Memorandum)

### Plaintiff's Allegations Fail to State a Claim as a Matter of Law

### A. Plaintiffs Allegations Are Insufficient to Show Any Justiciable Controversy And Thus Fail To State a Claim Under the Declaratory Judgment Act

§3-409 states - .

(a) Except as provided in subsection (d) [divorce] of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

    (1) An actual controversy exists between contending parties;

    (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

    (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

(b) Special form of remedy provided by statute.- If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

(c) Concurrent remedies not bar for declaratory relief - A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

(d) Exception as to divorce or annulment of marriage.- Proceeding by declaratory judgment is not permitted in any case in which divorce or annulment of marriage is sought.

(e) Speedy hearing.- A court may order a speedy hearing of an action of a declaratory judgment and may advance it on the calendar.

§3-409(a) – Plaintiff's Dec Action "will serve to terminate the uncertainty or controversy giving rise to the proceeding," as Defendants' legal position is that banks pay the IF, and Plaintiff's position is that the MasterCard Cardholder pays the IF.

§3-409(a)(1) – Defendants have admitted to a controversy in their Motion to Dismiss.

**Joshua R. Floum**, General Counsel, Visa Inc. Written Testimony Before the **House Committee on the Judiciary Task Force on Competition Policy and Antitrust Laws** May 15, 2008.

> "When a cardholder uses his or her credit card with a retailer, the retailer transfers the billing information to its acquirer, which transfers the billing request to the cardholder's issuer. The acquirer then credits the transaction amount charged to the retailer's account, less the merchant discount rate that it charges to the retailer. Accordingly, the retailer receives prompt payment. **The issuer subsequently pays the acquirer the amount of the transaction less the interchange fee**, which (absent a bilateral agreement) is set in default form by the open-loop system, **and posts the transaction to the cardholder's account**. The cardholder thereafter pays the issuer the transaction amount." [bold & underline added].

Defendants have not, and will not, take the position that Visa Inc.'s 4 Party, Open Loop system is any different than Mastercard Inc.'s 4 Party, Open Loop system. They both work the same way, which is explained in Plaintiff's pleading and in great detail in Plaintiff Exhibit A. Mr. Floum's sworn testimony explains who pays the IF exactly the same as Plaintiff's pleading. The IF is paid by the Cardholder, regardless whether they be a VISA, or MasterCard Cardholder.

§3-409(a)(2) – "Antagonistic claims are present," without a doubt. "…which indicate imminent and inevitable litigation." Plaintiff Exhibit A.

§3-409(a)(3) – Plaintiff has asserted "a legal relation, status, right" that has been challenged by Defendants. Defendants challenge Plaintiff's position that the MasterCard Cardholder pays the IF.

This is not a divorce proceeding.

As Defendants state in Defendants Memorandum, pg. 10, last para., "*A disagreement over which declaratory relief is sought must be such that 'a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.' See, e.g., Oyarzo v. Maryland Dep't of Health & Mental Hygiene, 187 Md. App. 264, 274 (Md. Ct. Spec. App. 2009).*" It is very evident in this case the need for deciding who pays the IF.

**B. Plaintiff's Allegations Likewise Fail To State a Claim Under the Maryland Consumer Protection Act** [Defendants' Memorandum pg. 12]

Plaintiff alleged, pg. 2, para. 4 [pleading] a violation of MD Commercial Law §13-301. Defendants' Memorandum, pg. 13, 2nd para. states - "*Plaintiff includes no allegations suggesting any reliance. To state a misrepresentation claim under the MCPA, a plaintiff must allege not only that the defendant made a false or misleading statement or engaged in a misleading practice, but also that the plaintiff relied upon that representation or practice.*" Defendants continue to claim MasterCard Cardholders do not pay the IF. There is overwhelming evidence that the MasterCard Cardholder does pay the IF. Plaintiff / Ms. Doe has no choice but to rely on Defendants' practices as to the IF because Ms. Doe must pay each Citibank MasterCard monthly bill on time to protect her credit. Reliance is absolute until such time the dispute is settled.

At the end of pg. 12, beginning pg. 13, Defendants' Memorandum, Defendants state "*His Complaint, in fact, illustrates this point by citing to numerous public sources, discussing the allocation of fees, which date back far beyond any governing statute of limitations.*" [referring to Plaintiff's pleading where it says "ongoing scheme and continued misrepresentation as to who pays the IF"]. As to Ms. Doe's Citibank MasterCard, and every other MasterCard issued in Maryland, the statute of limitations <u>starts over</u> with every monthly billing statement, application & solicitation. As to Plaintiff Exhibit A, there is no statute of limitations on civil RICO, it falls

10

on the state discover rules. Plaintiff / Ms. Doe are within the 3 year statute of limitations as Ms. Doe's Citibank MasterCard was not issued until May 2016.

Defendants' Memorandum, pg. 13, last para., Defendants' state *"Finally, Plaintiff does not allege any injury arising out of any alleged violations of the MCPA. In a private action under the MCPA, the injury must be 'objectively identifiable ... [i]n other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance' on the misrepresentation."* Defendant Citibank refuses to disclose to Ms. Doe the IFs charged to her MasterCard account, making it impossible for Ms. Doe to know the exact amount of her loses, which is one reason Plaintiff elected to not request damages in this case. Plaintiff is the Master of his pleading.

As to Defendants *Footnote 6*, Defendants' Memorandum, Plaintiff's claims start with the first MasterCard monthly billing statement in 2016. That and every monthly billing statement since fall within the 3 years under Maryland law, as do all solicitations sent to Ms. Doe after May 2016.

Pg. 14, 1st para., Defendants' Memorandum, Defendants state – *"Plaintiff has identified no representations or deceptions Mastercard or Citibank purportedly practiced here, and the Complaint on its face reflects that interchange fees were public information."* Defendants state Maryland MasterCard Cardholders (MMC) do not pay the IF. The Federal Government says all VISA / MasterCard Cardholders pay the IF. That includes the MMC. In the vast majority of domestic retail merchant transactions, cash customers pay more for the goods or services because they pay the same retail price as MasterCard transactions for the same item because the MMC transaction has the IF built into it. *Omid's Crown Auto Service in Columbia, MD supra.*

## CONCLUSION

This case is without a doubt a case of controversy. Unless this Court takes the position that the federal government's numerous investigations as to who pays the IF are incorrect, and, unless this Court takes the position that Plaintiff's pleading is untrue, as to who pays the IF, Defendants' Motion to Dismiss is unwarranted. Injury is undeniable.

Defendants' position on Plaintiff's name is a moot point.

Plaintiff's assignment is valid;

**THEREFORE**, for the reasons stated above Plaintiff respectfully requests Defendants' Motion to Dismiss is denied.

Dated: January 23, 2018

Respectfully submitted,

*[signature]*

Prescott Lovern, Sr., *pro se*
15 E. Churchville Rd., STE 150
Bel Air, MD 21014
(941)-870-8072
corporate@rlassociateslaw.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that on January 23, 2018, he sent a complete copy of this Opposition Motion, with Exhibit, via regular mail to the following:

Craig A. Benson
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
2001 K Street, NW
Washington, DC 20006

Colleen M. Lauerman
Sidley Austin LLP
1501 K Street, N.W. #600
Washington, DC 20005

Benjamin R. Nagin
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019